IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA AUDIT, | Civil Action No. 2:25-cv-01195 |
| Plaintiff, | |
| v. | Judge Stickman |
| CHNEP, *et al.*, | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

Without waving their jurisdictional defenses under Rule 12(b), ten Defendants JIAHONG Co.Ltd (Def. No. 172), YUTI Co.Ltd (Def. No. 173), JIONGJING Co.Ltd (Def. No. 196), JIAYANG Co.Ltd (Def. No. 197), WEILANG Co.Ltd (Def. No. 225), HANCI Co.Ltd (Def. No. 227), FANGLIU Co.Ltd (Def. No. 235), MINGKU Co.Ltd (Def. No. 236), FANGHAO Co.Ltd (Def. No. 273), WAIHE Co.Ltd (Def. No. 275) (collectively "Defendants"), by and through their undersigned counsel, respectfully submit their Opposition to Plaintiff's Motion for Entry of a Preliminary Injunction. [Dkt. No. 22].

### INTRODUCTION

Contrary to Plaintiff's claim, a preliminary injunction against Defendants is neither necessary nor appropriate in the present case.

*<u>First</u>*, Plaintiff cannot establish a likelihood of success because this Court lacks personal jurisdiction over Defendants. All ten Defendants have moved to dismiss for lack of personal jurisdiction [Dkt. No. 50], supported by declarations showing that eight Defendants made no

1

sales of the accused products and the two that did make a single sale did not sell or ship into Pennsylvania. Plaintiff's reliance on website screenshots, which at most suggest that products could be shipped to Pennsylvania, is insufficient to establish jurisdiction. Therefore, Plaintiff cannot demonstrate success on the merits, and the injunction should be denied at the threshold.

**_Second_**, Plaintiff cannot show irreparable harm. Plaintiff delayed more than six months after obtaining screenshots of the alleged infringement before seeking injunctive relief. Such delay undermines any claim of urgency or irreparable harm.

Moreover, six of the ten Defendants' Walmart seller accounts had been terminated months before Plaintiff sought its motion, and all accused product listings have been removed or discontinued. With no ongoing business operations and no continuing availability of the allegedly infringing works, there is no imminent harm to enjoin.

**_Third_**, the scope of Plaintiff's requested asset freeze is vastly disproportionate. The Supreme Court and the Third Circuit have made clear that prejudgment asset restraints may not extend to general funds unconnected to the alleged misconduct. Yet Plaintiff seeks to freeze tens of thousands of dollars from Defendants' accounts, despite Defendants' negligible or nonexistent sales of the accused products. This overreach improperly seizes funds unrelated to the alleged infringement and imposes an unjust burden on Defendants.

**_Finally_**, even as to the two Defendants identified as having made a single sale, the accused works are substantially dissimilar to Plaintiff's copyrighted painting. Plaintiff's work features a vintage text background and bees, while Defendants' works depict wooden lattices, butterflies, and textual elements on jars conveying entirely different expressive content. These material differences confirm that no substantial similarity exists in the protectable expression, defeating any claim of copyright infringement.

2

## **PROCEDURAL BACKGROUND**

On August 6, 2025, Plaintiff filed its Complaint against numerous defendants, including Defendants, for copyright infringement. [Dkt. No. 2].

On August 6, 2025, Plaintiff filed an *ex parte* Motion for entry of a temporary restraining order, including a temporary injunction, a temporary asset restraint, expedited discovery, and an order to show cause why a preliminary injunction should not issue. [Dkt. No. 4]. The Court granted the motion on August 7, 2025. [Dkt. No. 17].

On August 15, 2025, Plaintiff filed a Motion for entry of a preliminary injunction. [Dkt. No. 22]. Per the Court's directory in Order issued on August 26, 2025 [Dkt. No. 39], Defendants jointly submit this Opposition to Plaintiff's Motion for entry of a preliminary injunction.

## **LEGAL STANDARDS**

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311–312 (1982)).

The first two factors are the "most critical." *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009). If both are present, a court then balances all four factors. *Id*. In each case, courts "must balance the competing claims of injury and must consider the effect

on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quoting *Amoco Production Co*., 480 U.S., at 542).

## ARGUMENT

### A. Plaintiff cannot establish a likelihood of success because this Court lacks personal jurisdiction over Defendants

As a threshold matter, all ten moving Defendants have challenged this Court's exercise of personal jurisdiction over them with respect to the alleged infringement. *See* Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Dkt No. 50]. Defendants' evidentiary submissions establish that eight Defendants made no sales of the accused products at all, and the two Defendants that did make a single sale each did not sell or ship into Pennsylvania. *Id*. Plaintiff's evidence consists only of website screenshots suggesting that listings could be shipped to Pennsylvania, which is insufficient to demonstrate suit-related contacts with this forum.

Because Plaintiff cannot demonstrate personal jurisdiction ovr Defendants, it necessarily cannot carry its burden of demonstrating a likelihood of success on the merits for purposes of preliminary injunctive relief. *See Alahverdian v. Nemelka*, No. 3:15-cv-060, 2015 U.S. Dist. LEXIS 21266, at *3 (S.D. Ohio Feb. 23, 2015) ("Inherent in showing a substantial likelihood of success on the merits is a showing that Plaintiff could defeat a lack of personal jurisdiction defense.") (citing *Catalog Marketing Services, Ltd. v. Savitch*, 1989 U.S. App. LEXIS 22172, 1989 WL 42488, *2 (4th Cir. 1989) ("Generally a plaintiff must only make a prima facie showing of personal jurisdiction to defeat a motion to dismiss for lack of personal jurisdiction,... however, when injunctive relief is sought, a stronger showing must be made. ...[W]hen a preliminary injunction is requested, the plaintiff must demonstrate "that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits."); *Visual Sciences, Inc. v. Integrated Communications, Inc*., 660 F.2d 56, 58

4

(2d Cir. 1981); *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir. 1985); *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)).

Accordingly, because Plaintiff has not established—and cannot establish—that this Court has personal jurisdiction over Defendants, Plaintiff's request for a preliminary injunction should be denied at the outset.

### B. Plaintiff's prolonged delay in seeking injunctive relief and the termination of Defendants' Walmart seller accounts demonstrate a lack of irreparable harm

The Supreme Court has made clear that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff's **delay** in bringing suit undercuts its claim of irreparable harm." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995).

The Third Circuit noted that the logic behind preliminary injunctions follows the general logic of equity: "[T]here is an urgent need for speedy action to protect the plaintiffs' rights. *Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action*." *Del. State Sportsmen's Ass'n v. Del. Dep't of Saf. & Homeland Sec.*, 108 F.4th 194, 206 (3d Cir. 2024) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)); *see also Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) (noting that delay in seeking injunctive relief weakens claims of irreparable harm); *Ixmation, Inc. v. Switch Bulb Co.*, No. 14 C 6993, 2014 U.S. Dist. LEXIS 150787, 2014 WL 5420273, at *7-8 (N.D. Ill. Oct. 23, 2014) (*four-and-a-half month delay* precluded finding of irreparable harm); *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 441 (E.D.N.Y. 2013) (*five-month delay* in seeking preliminary injunction after filing suit indicated that the plaintiff faced no threat of

5

irreparable harm because it "undermine[d] the sense of urgency that typically accompanies a motion for preliminary injunction"); *Playboy Enters. Inc. v. Netscape Commc'n.s Corp.*, 55 F. Supp. 2d 1070, 1090 (C.D. Cal. 1999) (finding that a *five-month delay* in seeking injunctive relief demonstrated a lack of irreparable harm).

*First*, the screenshot evidence purporting to show Defendants' alleged infringement was all taken between December 2024 and February 2025 (*see* [Dkt. No. 7-1 at pp. 172-173, 190, 211, 213, 220-221, 252-253]; *see also* JIONGJING's evidence provided by Plaintiff [Dkt. No. 50-1]), yet Plaintiff did not seek injunctive relief until six months later, on August 6, 2025 [Dkt. No. 4]. This unexplained and substantial delay in time forecloses any claim of genuine "irreparability" or urgent need.

*Second*, The Third Circuit has long held that "an injury measured in solely monetary terms cannot constitute irreparable harm" and therefore, a party alleging only monetary harm cannot be entitled to injunctive relief. *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 556 (3d Cir. 2009) (reversing the district court's preliminary injunction because the Third Circuit did "not see in the record before us any evidence of a non-monetary injury") (citing *Bennington Foods LLC v. St. Croix Renaissance, Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008) and *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1145 (3d Cir. 1982).

Further, the possibility that a preliminary injunction could prevent ongoing harm is not enough. *Del. State Sportsmen's Assoc, Inc.* 108 F.4th at 201, (stating that "[c]ourts have strayed from the primary purpose of preliminary injunctions and instead started to use them just to prevent harm."). The Third Circuit has cautioned that "the function of the court is not to take whatever steps are necessary to prevent irreparable harm" before there has been a trial on the merits. *Id*. at 200.

Here, six of the ten Defendants' Walmart seller accounts had been terminated before Plaintiff sought its Motion for Entry of a temporary restraining order on August 6, 2025. (*See* table below, and Declarations in Support of Defendants' Motion to Dismiss, Dkt. No. 50-2, 50-4, 50-5, 50-7, 50-8, 50-10). As a result, there is no continuing business operation by these Defendants, and thus no continuing harm that requires an injunction.

| Defendants | Terminated on |
|---|---|
| WEILANG Co.Ltd   (terminated) | April 3, 2025, Dkt. No. 50-7, attach 3 |
| FANGLIU Co.Ltd   (terminated) | April 10, 2025, Dkt. No. 50-2, attach 3 |
| FANGHAO Co.Ltd   (terminated) | April 18, 2025, Dkt. No. 50-4, attach 3 |
| WAIHE Co.Ltd   (terminated) | May 14, 2025, Dkt. No. 50-5, attach 3 |
| JIAHONG Co.Ltd   (terminated) | April 18, 2025, Dkt. No. 50-8, attach 3 |
| JIAYANG Co.Ltd   (terminated) | March 25, 2025, Dkt. No. 50-10, attach 3 |

Further, the specific Walmart product listings have been removed or discontinued. All ten Defendants, who were "piggyback sellers" offering products under existing Walmart product listings, did not create or edit the now-removed or discontinued listings to include Plaintiff's artworks, and therefore cannot continue to offer any allegedly infringing products.

Therefore, with no credible threat of ongoing or future infringement, a preliminary injunction is neither necessary nor appropriate. This conclusion is further underscored by Plaintiff's protracted delay in moving for injunctive relief after it first obtained evidence of the alleged infringement.

In short, more than half of the Defendants no longer have operational Walmart seller accounts, and all of the relevant listings have been taken down or discontinued — making it impossible for these Defendants to continue any infringing activity. Because Plaintiff fails to demonstrate any ongoing or imminent harm, it does meet its burden for extraordinary relief, and its request for a preliminary injunction should therefore be denied.

### C. The Asset Restrained Amount Far Exceeds Any Profits Potentially Subject to Equitable Relief

The Supreme Court has held that district courts generally lack the authority "to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication" of a plaintiff's claim for money damages." *Grupo Mexicano de Dessarrolo v. Alliance Bond Fund*, 527 U.S. 308, 333 (1999). This has also been affirmed in the Third Circuit, which noted that *Grupo Mexicano* held that "an injunction freezing assets cannot be entered in an action for damages where no lien or equitable interest in the assets is claimed." *Karpov v. Karpov*, 555 F. App'x 146, 147 n.2 (3d Cir. 2014); *AFG Media Ltd. v. Poptrend-Off.*, 2023 WL 9023415 at *8 n. 6 (W.D. Pa. Dec. 29, 2023) ("While the Court has the authority to restrain assets that have a close nexus with its exercise of equitable powers, it cannot do so solely for the purpose of preserving assets upon which a plaintiff may execute in the future if it should prevail."); *Akers v. Akers*, 2015 WL 4601155 at *2 (E.D. Pa. July 31, 2015) ("A federal court has no authority generally to freeze a defendant's funds to help ensure satisfaction of a judgment should the plaintiff prevail on an underlying legal claim."); *see also, Karaha Boda Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 11, 117 n.8 (2d Cir. 2007) ("federal courts lack power to issue…[i]njunctions that prohibit a party from transferring assets pending resolution of an action."); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002); *Micnerski v. Sheahan*, 2002 WL 31415753, at *1 (N.D. Ill. Oct. 25 2002)("federal district courts do not have the power to grant preliminary injunctions to prevent a defendant from transferring assets in which no lien or equitable interest is claimed").

Prejudgment asset restraints, therefore, are limited to cases <u>seeking equitable relief</u>. *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940). Following, "a plaintiff may obtain a prejudgment freeze on a defendant's assets only if he has asserted <u>a cognizable equitable</u>

8

*claim*, has demonstrated a sufficient nexus between that claim and specific assets of the defendant which are the target of the injunctive relief, and has shown that the requested interim relief is a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed." Akers, 2015 WL 4601155 at *2. (internal citations omitted) (emphasis added); In re Trustees of Conneaut Lake Park, Inc., 554 B.R. 100, 107 (Bankr. W.D. Pa. 2016) (same); *AFG Media Ltd.*, 2023 WL 9023415 at *8 n. 6 (holding that the blanket asset freeze of all funds in defendant's account "goes further than what is permitted and beyond the close nexus required" and ordering that the asset freeze be reduced to only funds from defendant's sales of the products infringing plaintiff's copyright – "but no more."); *see also, Deckers Outdoor Corp. v. Partnerships & Unincorporated Associations Identified on Schedule A*, 2013 WL 12314399 at *2 (N.D. Ill. Oct. 31, 2013) ("even where equitable relief is sought, the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief.").

Here, most Defendants made zero sales of the Accused Products. *See* Declarations in Support of Defendants' Motion to Dismiss, Dkt. No. 50-2 to 50-11. Even for the few who recorded single-digit sales, the profits made from the Accused Products are *de minimis*. By contrast, Plaintiff has demanded an asset freeze that restrains all funds in Defendants' accounts, despite no showing that such a sweeping freeze is necessary to secure the limited equitable remedy Plaintiff purports to seek under 17 U.S.C. § 504(b). This overreach runs counter to well-established precedent limiting prejudgment restraints to amounts reasonably necessary to cover potential equitable relief.

Each Defendant's sales of the alleged infringing products, and the corresponding amounts to be restrained, are summarized in the table below:

| Defendants | Units Sold | Revenue | Amount Frozen |
|---|---|---|---|
| JIAHONG Co.Ltd (terminated) | 0 | 0 | $78,114.21 |
| JIAYANG Co.Ltd (terminated) | 1(Sold to FL) | $13.7 | $45,029.27 |
| WEILANG Co.Ltd (terminated) | 0 | 0 | $8,090.9 |
| FANGLIU Co.Ltd (terminated) | 0 | 0 | $62,059.64 |
| FANGHAO Co.Ltd (terminated) | 0 | 0 | $11,969.48 |
| WAIHE Co.Ltd (terminated) | 0 | 0 | $982.94 |
| YUTI Co.Ltd | 0 | 0 | $32,161.3 |
| JIONGJING Co.Ltd | 1(Sold to TX) | $13.87 | $93,911.22 |
| HANCI Co.Ltd | 0 | 0 | $59,501.36 |
| MINGKU Co.Ltd | 0 | 0 | $4,515.19 |

Since Defendants' profits from the alleged infringement are nonexistent or minimal, restraining significantly greater amounts is disproportionate and imposes an unfair burden on Defendants. The practical effect of Plaintiff's request is a *de facto* seizure of Defendants' entire business revenues —even though most of these funds have no nexus to the alleged infringement.

Defendants acknowledge that their searches were conducted based on the specific allegations and the items identified in Plaintiff's submissions. If Plaintiff later alleges that Defendants sold additional accused products not presently identified, Defendants would undertake supplemental searches to determine whether any such sales occurred. On the current record, however, there is no evidence that any Defendant sold or shipped the accused products into Pennsylvania.

Under these circumstances, no basis exists for freezing amounts that far exceed any plausible equitable accounting of profit. Should the Court opt to maintain any asset restraint, the amount should be narrowly tailored to the specific, demonstrated amount of profit, if any, tied to the infringing sales. Anything beyond that would be unwarranted.

**D. Defendants JIONGJING and JIAYANG's single sale of accused products are substantially dissimilar to Plaintiff's copyrighted artwork**

Under U.S. copyright law, protection extends only to the original, creative expression of an idea—not the idea itself, generic themes (e.g., sunflower imagery), or common design elements. To establish copyright infringement, the allegedly infringing works—those attributed to a single sale by Defendants JIONGJING and JIAYANG —must be "substantially similar" to the protected expressive elements of Plaintiff's copyrighted sunflower painting (Reg. No. VA 2-420-419, Dkt. 2-3, p.3), as identified by Plaintiff. *See* Dkt. No. 7-1, p. 190; and Dkt. No. 50-1.

Here, a comparison of the accused products sold by JIONGJING and JIAYANG with the copyrighted artwork demonstrates a lack of substantial similarity, because they differ materially from Plaintiff's copyrighted painting in all core protectable expressive components, shown and analyzed below:

| The accused products | Reg. No. VA 2-420-419, Dkt. 2-3, p.3. |
|---|---|
|  |  |
| JIONGJING and JIAYANG's sunflower paintings have a background of wooden lattice, with butterflies around it. The plaintiff's copyrighted sunflower painting has a background of vintage English letters, with bees around it. ||

*First*, in terms of the background—an important visual component—the works of JIONGJING and JIAYANG adopt a wooden lattice design that emphasizes a rustic and natural atmosphere. In contrast, the plaintiff's copyrighted work features vintage English letters as its background, which conveys a cultural and retro tone. The two backgrounds are entirely distinct in three key aspects: form (the wooden lattice presents a textured, material form, while vintage English letters are text-based), function (the wooden lattice primarily serves to set a natural, down-to-earth atmosphere, whereas the vintage English letters carry symbolic messaging related to culture and retro style), and visual perception (the wooden lattice evokes an earthy, tactile feeling, while the vintage English letters bring an artistic, literate impression).

*Second*, regarding the surrounding creatures that complement the sunflower theme, the works of JIONGJING and JIAYANG incorporate butterflies—creatures symbolizing freedom and romance—while the plaintiff's copyrighted work uses bees, which stand for diligence and order. These two types of creatures differ fundamentally: they belong to distinct species, bear entirely different symbolic meanings, and exhibit obvious differences in visual forms (such as wing structure, body shape, and flight posture). There is no room for similarity between them in terms of visual expression.

*Third*, the text on the jars in the works of JIONGJING and JIAYANG constitutes a critical element of original expression. The blue jars in these paintings contain a cohesive narrative centered on self-acceptance, with texts such as "To make MISTAKES" and "To have BAD DAYS" that form the core of the works' thematic expression. Notably, the plaintiff's copyrighted work lacks any such text and jars. This difference is not merely a distinction in "idea" but an irreconcilable gap at the "expression layer"—a core dimension of copyright protection.

In summary, the sunflower paintings sold by Defendants JIONGJING and JIAYANG are substantially different from Plaintiff's copyrighted work (Reg. No. VA 2-420-419, Dkt. 2-3, p.3) in their core visual elements, including background, surrounding creatures, and critical original text. Such differences fully demonstrate that the works of these Defendants do not infringe Plaintiff's copyrighted artwork, and Plaintiff's application for a preliminary injunction should therefore be denied.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Entry of a Preliminary Injunction, and specifically the assert restraint.

Defendants affirm that they will not sell or otherwise offer any of the products alleged by Plaintiff to be infringing during the pendency of this litigation. Accordingly, there is no threat of ongoing or imminent harm justifying injunctive relief, and the requested extraordinary relief should be denied.

September 2, 2025,                    Respectfully submitted,
                                      /s/ *He Cheng*
                                      He Cheng
                                      Palmer Law Group P.A.
                                      401 E Las Olas Blvd, Suite 1400
                                      Fort Lauderdale, FL 33301
                                      Tel: +1 (917) 525-1495
                                      Email: rcheng@palmerlawgroup.com
                                      ***Attorney for Defendants***